The court will proceed to the fifth case, the United States v. Rex Black. Good morning. May it please the court. Ever since the Supreme Court decided that the sentencing guidelines were no longer mandatory, the Supreme Court and this Court have consistently said that a critical aspect of a federal sentencing hearing and determination is the accurate determination of the correct sentencing range under the guidelines. That's largely what this appeal is about. In this case, the district court came up with a sentencing range of 70 to 87 months by recreating the meaning of tax loss as it was stated in Section 2T1.1 of the guidelines, the provision that everybody in the case agreed was the applicable one. It did so in three ways. One, it allowed aggregation of the checks and bills of exchange that Mr. Black had sent that well exceeded any tax loss. Two, despite the language in Application Note 1, the court allowed penalties and interest to be included, even though this case there was no 26 U.S.C. 7201 or 7203 charge in this case. And three, the tax loss that the IRS had come up with was clearly incorrect on its face because as I point out in my briefs, there was double counting of income. There was the inclusion of a trust that had nothing to do with what Mr. Black was doing. And so even without looking at deductions, some of which were filed as part of these trust returns, what we had is a tax loss of no higher than $1.3 million. Under the guideline calculations for the four counts, counts 1, 2, 4, and 5, that would have left an offense level of 22 with another 2 for the count that was grouped separately, leading to a guideline range of 51 to 63 months. So the guideline range should have been no higher than that. Mr. Saltzman? Yes, Judge. I'm troubled by the idea that the underlying tax liability should be opened up for dispute in the context of sentencing for this attempt to defraud the IRS with these phony checks and bills of exchange, whatever they are. I don't understand why. I mean, there are methods by which somebody in Mr. Black's position could challenge the audit results, but he chose not to do that. He instead chose to write phony checks for the whole amount and more. My response is threefold, Judge. First of all, the guideline range is dictated by the tax loss amount. To allow the wrong amount to be used is to take this out of the mooring. But the problem is Black didn't dispute the errors in the 2000 audit. As I understand it, he didn't cooperate at all with the IRS during the audit, didn't raise what appear to be very legitimate reasons that you're raising. The time to do that was at the time of the audit. Well, yes and no, Judge. It was at the time of the audit, but the guidelines don't say that it's forever closed. In fact, as a result of the November 2013 amendment to 2T1.1, deductions that weren't raised in the tax returns are allowed to be litigated and included if they can be shown to have been legitimate. Here, some of the deductions were raised. Some of the errors in calculating the tax loss are just clearly wrong. Again, you have the double inclusion of money. I came up with a million dollars that's just wrong on its face. The aggregation is a problem, and there's no case that even gets close to allowing it. In fact, the only time the guideline mentions aggregation is in 2T1.1C1D in Application Note 7, and that has to do with the situation that's described in the Sixth Circuit's May decision in which the taxpayer owed taxes as a result of his corporate taxes and also owed personal income taxes. And in that case, the court said aggregation was appropriate. Mr. Salzman, let me come at this from a slightly different angle. I think I understand your textual arguments under 2T1.1 as to both the aggregation and the interest and penalties, and those are strong arguments. At the same time, I think I understand the district judge's instincts to say, wait a minute, that doesn't really capture what was going on here. Let me ask, could each of these phony checks and bills of exchange given to the IRS have qualified as an offense under Section 514A, the same charge for the bill of exchange given to the clerk of court? There are separate counts, Judge. There's three 514A counts that do not include the $326,000 bill of exchange to the district court. It's counts 2, 4, and 5, Judge. Those are charged as separate counts. He's convicted of those counts. And those are charged as 514A? Yes, Judge. No, the – yes, Judge. Okay. 514A-3. Okay. I guess what I'm trying to get at here is maybe let's look at the – we've got our multiple attempts to defraud the IRS of amounts that wildly exceed the actual amount he owed to the IRS, right? And include – and included penalties and taxes. Right. Penalties and interest. Excuse me, Judge. Right. But granted the 2T1.1 says don't include those. Other – one could take guidance from other aspects of the guidelines, like 2B1.1, the fraud – general fraud guideline that would apply to 514A counts, and say, you know, I think this is worse than just sending one check. Not – you couldn't do this without a variance. You'd have to say here are the guidelines under 2T1.1, but I don't think that sufficiently captures the offense. Is there any reason why the district judge couldn't do that if we agree with you in remand? I don't think – well, the parties all agreed that 2T1.1 was the guideline, Judge. There is the obstruction of justice guideline that's 2J1.2 that could have been used. This is like – these are just bad checks, right? I mean, this is – that's a 2B1.1 kind of offense, no matter what the debt is that you're trying to get out from under, right? I'm not sure, Judge. Okay. In terms of the penalties and interest, the district court found that Black willfully failed to pay his taxes, right, and willfully evaded paying taxes. And when that's charged, you have no dispute that when that's charged, that the district court can include penalties and interest. If it's charged under 26 U.S.C. 7201 and 7203, the guideline actually says – the application note, Judge, says the tax loss does not include interest or penalties except in willful evasion of payment cases under 26 U.S.C. 7201 or willful failure to pay cases under 26 7203. As I said in my brief, it doesn't say such as or including but not limited to. So the other guideline – I don't recall the number right now – that says that courts can – and also case law that says that courts can take into account uncharged conduct, you would say would not apply because this specific commentary says that? Yes, Judge. If I can reserve the rest of my time. Thank you. Well, your time is done, Mr. Alton, but you will have a rebuttal. Thank you. All right. Mr. Franzblau. Good morning, Your Honor. May it please the Court. My name is Sean Franzblau, and I represent the United States. The defendant presented the IRS with six different fictitious obligations. Each time he did so, he committed a separate offense, and the object of each offense was to deprive the IRS of the full face value of the instrument he presented. Those are the key factual findings made by the district court. They are not clearly erroneous, and that is why tax loss in this case is based on the face value of the fictitious obligations that the defendant presented to the IRS, not the fees and interest that he owed the IRS, the actual loss, and not the underlying IRS audit. The district court's opinion was based on the face value of the fictitious obligations only. Now, the defendant's argument is premised on this faulty idea that tax loss under 221.1 cannot exceed actual loss to the IRS. That is wrong on several different levels. Generally, it ignores this court's clear precedent that says tax loss is attempted or intended loss, not actual loss to the government. That's United States v. Hassebrock, United States v. Chavin. But here's the key point. Here is the specific point we need to hone in on. It's important to draw a distinction under 221.1c1. Everyone agrees that that applies. This is a case that involved the submission of false documents. We're looking at the object of the offense. We need to distinguish between what motivates someone to commit an offense and the actual criminal acts that they commit, the difference between why they're doing something and what they did. It may very well be that the defendant in this case, first of all, there's really no evidence of this, but it may be that all he was trying to do was avoid an underlying tax debt of $5.7 million. But that doesn't change the fact that on six different occasions, he presented the IRS with a fictitious obligation. And each time he did so, his object was to inflict a separate financial loss. That is what we look to. We look to the criminal acts, not his motivation for doing them. And there is simply no other way to look at the object of the presentation of a fictitious financial obligation than to deprive the recipient of the full face value. If we were proceeding under 2B1.1, I'd agree with you completely. I have a little trouble, though, since interest and penalties are not included, for example. Your Honor, I'll make two points. The district court decided to go with 2T1.1 over 2B1.1. The parties all told him that was what he should do, right? Correct. And that was based on this court's decision in United States v. Brisson. It may have been an over-reading of that. But I would argue that it's harmless error because the defendant is actually much worse off under 2B1.1. He starts at a base offense level of 27, and he'd probably get a two-point hit for violating a court's injunctive order, which would have taken him up to a total offense level of 29, and he'd be facing a much higher guideline range. So, if anything, he got a break with the 2T1.1. But I think it was a correct interpretation of 2T1.1 to treat intended loss the exact same way as under 2B1.1 because here we have a case that involved the submission of fraudulent documents. It is the affirmative attempt to defraud. Right. I get that. What I have trouble with, let's go back to the interest and penalties. Sure. Where the text seems to just be squarely against your position. Your Honor, the district court's calculation of the tax loss amount did not take into account the interest and penalties. All it looked at was the numbers that the defendant wrote down on the fictitious obligation. It included the amount he was trying to pay, which included interest and penalties, right? And then you guys took a very different position. You were saying just pick the highest face value of one, right? Your Honor, it goes back to your point that even if the IRS audit was incorrect and included interest and penalties, he then responded by committing a criminal act against the IRS. That's what we're holding him accountable for. And that's why 2T1.1 is such a lousy fit for this rather unusual offense. But that's what you all decided to do. And I frankly have a lot of sympathy for Judge Holderman here. I just don't know. I think he could impose this sentence. If we send it back, he could impose this same sentence. He might even be able to go higher. But it's a little hard to interpret 2T1.1, for example, to include interest and penalties when you don't have a charge under the relevant 72.01 or 72.03. And again, Your Honor, the tax loss calculation was not looking at interest and penalties. And why doesn't that violate 2T1.1 then? 2T1.1 is defined in Subsection C. The tax loss does not include interest or penalties except in willful evasion of payment cases under 72.01 and willful failure to pay cases under 72.03. This is not one of those. How hard is this? I 100% agree with you. And that's why interest and penalties did not inform the district court's calculation of tax loss. He looked at the face value of the fake checks that were sent in. Now, that may have informed the number that the defendant put down, but he doesn't get saved because he included interest and penalties in the fraudulent amount he tried to pay off. And we don't know that that's what the defendant was trying to do. Keep in mind, none of the checks that he wrote were for the actual full amount of the debt he owed. Yeah, but when he was billed by the IRS, it showed the amount of tax due, correct? And it showed the amount of interest and penalty. Correct, but he never wrote a check for that full amount. No, I totally get that because his checks were higher than the amount, which was kind of weird. But the point is, he was billed for the IRS for the taxes and for the interest and penalty, and that provision that Mr. Saltzman read is dead on point. And so my question is, are you aware of any cases where the defendant was not charged under 72.01 or 72.03 and penalties and interest were included in the tax loss calculation? I'm not, Your Honor, and nor is this one. But it's charged like U2T1.1. I'm not aware of such a case, but that didn't happen here. Again, what the loss amount was based on was not on the IRS audit, not any inclusion of interest and penalties. It was the defendant's acts to defraud the government. And the amounts that he put on those face value of the fictitious obligations, we don't know that that included penalties and interest. He never tried to settle his full debt. What he was trying to do was discharge the liens that were put in place to secure the debt. He never wrote a check for the full tax loss amount. He was just trying to unencumber his property and disrupt the IRS's attempt to secure the debt. So it's completely speculative to say that that's what he was trying to do. Well, let me ask you this. Why shouldn't Mr. Black be able to present evidence that reduces this tax liability, especially in light of the 2013 amendment to 2T1.1 concerning unclaimed deductions and credits? Because, Your Honor, this is a case that involves the submission of fraudulent documents. That is the crime. That is the nature of the act that was charged here. And the guidelines say under 2T1.1c1, which is what the district court settled on, is the proper measuring stick for tax loss. And the appellant doesn't dispute that. That's because that is the nature of the case. If the offense involved tax evasion or a fraudulent or false statement or other document, the tax loss is the total amount of loss that was the object of the offense. If the object of the offense was simply to evade his taxes, you'd be absolutely right, and I'd concede error right now. But that was not the offense that was charged. The offense that was charged was the affirmative submission of fraudulent documents. That is what we're looking to determine. Why? Because all those checks totaled $14.6 million, even though the tax loss, at least the taxes that the IRS calculated were $5.35, he should have to pay that additional $9 million because he submitted those instruments. No, Your Honor. He's not paying. This isn't about restitution. I'm sorry, I meant the loss. Yes, Your Honor. Any time the loss amount is driven by quantity, we aggregate the figures. That's black letter law under the guidelines. Now, I hear your concern about loss inflation, and we had that same concern in the district court. Right, because that translates into sentencing. Correct. Exactly. But you still have to calculate the guidelines correctly, and if that gives you a number that the district court judge feels overstates the severity of the offense, that's just where you start. You still have the 3553A factors, and we encourage the district court judge to look at the nature and circumstances of the offense and see that in the backdrop there was only a $5.7 million actual loss to the IRS, and that's why we urged him to depart downward. Now, ultimately, he decided not to. Do we have any indication from Judge Holderman along the following lines? Look, 2T1.1 doesn't fit this very well. 2B1.1 doesn't fit it all that well. You guys can debate these issues about penalties and interest until the cows come home under the text of the guidelines, but my answer to that question simply is not going to drive my exercise of discretion under 3553A. Did he make any kind of statement like that? Your Honor, I'm not sure I totally understand the question. The question is we have many cases that tell district judges, in essence, you don't have to sweat the details of very difficult questions under the guidelines if you are using your discretion soundly under 3553A and make clear that's what you're doing and that the sentence is not driven by the guidelines. Did he say that? No. Well, I think that his sentence was driven by the guideline calculation, and he felt that that was the problem. He applied the letter of the guidelines. He applied 2T1.1C1, which says look to the object of the offense. He made a factual finding that the object of the offense was to deprive the full face value of the fictitious obligation presented, and he aggregated those values as he was required to under the relevant conduct and grouping provisions. If he felt that that overstated the severity of the offense, he could have departed under 3553A. He decided not to. He stated clearly on the record why he decided not to. It was not an abuse of discretion. And unless there's any questions, for those reasons, I'd ask that the district court sentence be... And I'm still having trouble with, you know, the tax loss. You know, it seems to me tax loss should be limited to the loss that the defendant attempted or intended to create through his tax offense. Him submitting those documents, I mean, the instruments he submitted up to that amount, you know, was over the amount of tax. But I guess we've gone over that, so that would just be repetitive. Do you want me to respond to that? Yeah, why don't you if you've got to respond. Absolutely. Every time he submitted a check to the IRS, he put those funds in jeopardy. We don't know. There's no evidence on the record that he would have stopped if he had been, you know, successful once. He failed a whole lot and he kept going. Who knows what he would have done if he had been successful? All we know is that he submitted six different fictitious obligations. Each time he did so, his object was to deprive the IRS of the face value of that object. We look to the criminal acts, not what's motivating the acts, not what might be his ultimate goal in committing the acts. He doesn't get off because, you know, oh, I didn't, for example... So is it your theory he submits check one, let's assume that first check was negotiated by the government, he would have gotten all that excess money back? It's completely speculative. Who knows? He submitted six different obligations. The IRS has to process tens of millions of these things a year. They make mistakes. Trust me, it happens. Are we to assume that he would have given back if he had been overpaid? I mean, it's just entirely speculative. All we know is the criminal acts that he committed, and the district court interpreted the object of those offenses, and he was not clearly erroneous in doing so. Thank you very much. A guideline that this is to address some of the questions. A guideline that focuses on tax loss as the driving force in the sentencing range has got to be about tax loss. Now, Judge Hamilton, you raised a point that I want to address. The tax 2T1.1 should have been followed. Did the court then have the right under the 3553A factors that include things like reflect the seriousness of the offense, to look at the whole picture and decide, well, we didn't just have one check sent? I can't argue that the court didn't have the right to proceed in that way. There were certainly some positive things that I tried to point out, that Mr. Black pointed out in his elocution, that cut another way. But that could well have happened, but that's not what happened here. 2T1.1 has to be about tax loss. That's what drives everything in that provision, and that provision was not followed here. Unless the court has questions. Thank you. Thank you, Mr. Saltsman. Thanks to the government counsel. The case is taken under advisement and the court will stand in recess. Mr. Saltsman, you were court appointed. Yes, sir. And, again, you have the additional thanks of the court for your able representation. Thank you. Court is in recess.